# UNITED STATES DISTRICT COURT
## District of Kansas

UNITED STATES OF AMERICA,

**Plaintiff,**

v.

**CASE NO. 26-MJ-8089-01-ADM**

CHRISTIAN PAGE,

**Defendant.**

# CRIMINAL COMPLAINT

I, Karen Smilgis, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief, and establishes probable cause that the following offense has been committed.

## COUNT 1

### POSSESSION OF CHILD PORNOGRAPHY
[18 U.S.C. § 2252A(a)(5)(B)]

On or between September 26, 2025, and January 15, 2026, in the District of Kansas and elsewhere, the defendant,

**CHRISTIAN ZACHARY PAGE,**

knowingly possessed, and accessed with intent to view, material that contained one or

more images of child pornography, as that term is defined in Title 18, United States Code, Sections 2256(8)(A) and 2256(8)(B), including one or more images of a prepubescent minor or a minor who had not attained 12 years of age, that had been mailed, and shipped and transported using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by computer, and that was produced using materials that had been mailed, and shipped and transported in and affecting interstate and foreign commerce by any means, including by computer.

In violation of Title 18, United States Code, Sections 2252A(a)(5)(B) and 2252A(b)(2).

I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed for the past 18 years, investigating federal violations. I am currently assigned to the Domestic Terrorism squad. This Complaint is based on the following facts known to me as a result of my personal participation in this investigation, and from reports made to me by other law enforcement agents or officers. This Complaint does not contain all information acquired during the course of this investigation but to show probable cause that Christian Page ("Page") committed the crime identified above.

<u>Background</u>

On May 2, 2025, officers with the Tonganoxie, Kansas Police Department interviewed Page about a nude image he posted online of an adult (hereinafter referred to as "Adult #1"). From the Tonganoxie investigation, I know that Adult#1 was 19 years

2

old when the image was taken and 21 years old when Page posted the image. Page initially claimed someone else pretended to be him and posted the image, denying that he posted the nude image. When shown an image of the post, Page recognized the image of Adult #1. Page said the photo had been "taken a long time ago." Eventually, Page admitted he posted the nude image of Adult #1 on Telegram.

Page contended that the image was visible for only a minute or two before it was taken down. Page claimed that he posted the image because Adult #1 was harassing him. At the conclusion of the interview, Page stated that if Adult #1 "doesn't want that stuff [images posted online] tell [Adult #1] to leave me alone."

That interview was part of the investigative package submitted to the Leavenworth County Attorney's Office for charges of invasion of privacy against Page. Subsequently, that office charged Page in Leavenworth County, Kansas District Court case number LV-2025-CR-000757 with breach of privacy.

On January 15, 2026, deputies with the Leavenworth County, Kansas Sheriff's Office arrested Page on the pending state charge. When arrested, Page had a Samsung cellular telephone on his person, so it was taken with him to the county jail. Sheriff's Office personnel placed the Samsung phone in a secure location as potential evidence.

On January 20, 2026, officers with the Tonganoxie Police Department applied for and obtained a state search warrant for the Samsung phone. The FBI assisted the Tonganoxie officers by transporting the Samsung phone to the Heart of America Regional Computer Forensics Laboratory ("HARCFL") in Kansas City, Missouri, for a forensic examination pursuant to the state search warrant.

Applications

*Telegram*

I know from my review of Telegram's website and my experience and training the following about Telegram, an encrypted social media and mobile messaging electronic communication service based outside the United States. Telegram advertises itself as a secure and untraceable communications platform. Telegram is a secure cloud-based communication platform that allows users to access their account from any computer or mobile electronic device, and to communicate with one another via instant message, group chats, file sharing, and encrypted voice calls. Telegram allows users to create groups, which can have up to 200,000 members. Users can post messages on Telegram groups that can be viewed by any member of the group and, if the group settings permit, by the public.

Telegram allows users to create Telegram channels, which permit users to broadcast messages to large audiences that "subscribe to" or "follow" that channel. A channel can have an unlimited number of subscribers. Messages that are sent through a Telegram channel are signed with the channel's name and photo, not with the individual user's information. Posts in a channel may be made by the channel's administrator(s); when made by a channel's administrator (of which there may be multiple), the post is signed with the channel's name and not the individual user's name. Posts in private messages, chatrooms, or channels may be forwarded to other private messages, chatrooms, or channels on Telegram.

4

When a user creates a Telegram account, the user must provide Telegram with a mobile telephone number, and that Telegram will send an automated account verification SMS ("short message service") code to that telephone number that the user must provide to Telegram to verify that the owner of the mobile phone is the owner of the Telegram account. Telegram allows users to associate an email address with their Telegram account at which they can receive a code to recover access to the account. Telegram provides users, as an added security measure, the ability to enable Two-Step Verification.

Every Telegram user has a display name (not unique), even if they do not have a username. Display names may use characters or emojis. Telegram accounts do not necessarily have a username. If a username is set for an account, then anyone can send that user messages and the user will appear in a search under @username. Every Telegram user is assigned a unique user ID. A user may utilize multiple different user IDs.

Telegram users may save messages in a specific "Saved Messages" folder within the Telegram app. To navigate to the "Saved Messages" folder, a user navigates through the menu to access the "Saved Messages." To place a message within the "Saved Messages" folder, the user must hold a finger on the message, select "forward" from a pop-up menu, and select "Saved Messages" from a list of contacts and folders. The message moves into the "Saved Messages" folder.

*Signal*

I know from my review of Signal's website and my experience and training the following about Signal, an encrypted private messaging application. A user can send

5

messages; make audio and video calls; send voice notes, images, and videos to their contacts which are secure, untracked, and free. Only the sender and recipient can read the messages.

The use of the Signal application on a user's phone causes some information to be stored temporarily within "cache." The cache is a high-speed, temporary data storage layer that holds frequently accessed information, allowing future requests for that data to be served faster. Signal temporarily retains encrypted copies of messages and media on the device to enable usability, minimizing server-side storage and exposure. Signal's cache resides on the user's device, not on Signal's servers after delivery. The cached data is protected using device-level and application-level encryption.

<u>Discovery of Child Sexual Abuse Material ("CSAM")</u>

Page's Samsung phone in his possession during his arrest in January 2026, was password-protected. Utilizing forensic tools, the HARCFL examiner obtained the passcode and "unlocked" the phone for the examination. On January 29, 2026, while extracting the Samsung phone's contents, the Digital Forensic Examiner noticed a video that appeared to be CSAM. The examiner located the suspected CSAM video in the cache for Signal.

*CSAM in Signal*

The suspected CSAM was less than 90 seconds in length and appeared to have segments spliced together. Initially the video depicted a female toddler around two to three years old, wearing only white panties. Then, what appeared to be an adult male hand fondled the toddler's vagina while the toddler cried, "Mama," repeatedly. The adult

6

male then attempted to penetrate the toddler's vagina with his penis several times. Then, the adult male masturbated until he ejaculated on the toddler's vagina.

Because the state search warrant did not include crimes associated with CSAM or the sexual exploitation of children, the examiner stopped the review of the Samsung phone. A second search warrant was obtained from United States District Court for the Western District of Missouri, which included authorization for a search for CSAM (the "Federal search warrant").

Pursuant to the Federal search warrant, the examiner at HARCFL concluded the examination, including a review for potential or suspected CSAM material. The examiner located additional CSAM videos in the Signal cache. The Samsung phone received these CSAM videos in a private message group from a member of that private message group. The sender of the CSAM videos referred to them as "Pizzaaaaa."[1] Here is a brief description of those five CSAM videos.

- The first video depicted two individuals who appeared to be nude adolescent females performing a dance. During the video, one of the females bent forward and separated their buttocks, exposing their genitalia on multiple occasions.

- The second video depicted an adult male inserting his erect penis into a prepubescent female's mouth.

---

[1] I know from experience and training that the term "pizza" is likely a derivation of "cheese pizza," and cheese pizza is a commonly used phrase to refer to "Child Pornography" with the "C" and "P" common to the start of each word.

- The third video depicted an adult male inserting his erect penis into a female toddler's mouth.

- The fourth video was the video described above, which was initially found on January 29, 2026.

- The fifth video depicted three nude prepubescent females and one nude prepubescent male. The male was receiving manual stimulation from a female, after which one of the females appeared to be directed to sit on the male genitalia and was subjected to vaginal penetration.

*CSAM in Telegram*

As the investigators reviewed the data from the Samsung phone pursuant to the Federal search warrant, they found multiple Telegram accounts on the Samsung phone. One of those Telegram accounts is associated with a telephone number ending in 1272, known to be assigned to Page's mother (hereinafter "Telegram Account 1272"). Within Telegram Account 1272, investigators identified a voice message and chats suggesting Page uses Telegram Account 1272. Specifically, investigators recognized Page's voice in the message recorded by the user of Telegram Account 1272. One of the chat messages identified the user of Telegram Account 1272 as "Christian." In another chat message in Telegram Account 1272, Page sent a photo of himself. In another chat message in Telegram Account 1272, Page sent his full name and address in Leavenworth, Kansas.

In Telegram Account 1272, investigators discovered within the "Saved Messages" tab of the Telegram application approximately 23 CSAM images and videos.

8

Here is a brief description of three of those videos.

- A video listing the date of September 26, 2025, and an accessed date of January 1, 2026, depicts the nude pelvis of a five- to six-year-old female child. The child's legs are spread apart, and an adult male penis is observed at the bottom of the frame. The male inserts his penis into the child's anus repeatedly during the approximate two minute and forty-three second video.

- A video listing the date of September 26, 2025, and an accessed date of January 1, 2026, depicts an eight- to nine-year old female child lying on her back with a green skirt pulled up exposing her genitals. The child's legs are spread apart, and an adult hand has their middle finger inserted into the child's vagina. The adult moves their finger in and out of the child's vagina and later the child uses their own hand to touch their genitals. This video is approximately two minutes and eleven seconds in duration.

- A video listing the date of September 26, 2025, and an accessed date of January 1, 2026, depicts the head and shoulders of a seven- to-eight-year old female child. The child is lying on a bed with an adult male penis inserted into her mouth. The adult moves his penis in and out of the child's mouth several times during the approximate 59 second video.

During an interview of Page's mother on May 4, 2026, she told investigators that she does not use the Telegram application. She has no knowledge of a Telegram account associated with her phone number, which ends in 1272. She has let Page use her phone occasionally, but she reported no one else uses her phone. Then, investigator's review of

9

Page's mother's cellular telephone on May 4, 2026, confirmed no download of the Telegram application on her phone.

During an interview of Page on May 4, 2026, he told investigators that he established Telegram Account 1272. Page denied receiving any CSAM videos or images in Telegram Account 1272. When asked about the "saved messages" with the CSAM videos in Telegram Account 1272, Page acknowledged that he was aware of the "saved messages" function and had saved media in his "saved messages" folder. However, Page denied saving any of the CSAM messages. Page admitted to having viewed CSAM, last viewing CSAM as a teenager. Page offered that someone must have "hacked" Telegram Account 1272 and that person must have saved those specific messages in Telegram Account 1272.

During the service of a search warrant at Page's residence on May 4, 2026, investigators located the phone that Page used after the Samsung phone was seized following his arrest in January (hereinafter the "May 4 phone"). Page provided the passcode to investigators for the May 4 phone, which matched the password for the Samsung phone obtained during the January arrest. Investigators accessed the contents of the May 4 phone, which had the Telegram application installed. That Telegram application included Telegram Account 1272. In reviewing the saved messages folder within Telegram Account 1272 on the May 4 phone, investigators noted the saved messages with the CSAM videos were not present, yet other saved messages from the saved messages folder identified from the January Samsung phone for Telegram Account 1272 were present on the May 4 phone.

10

Karen Smilgis
Special Agent
FBI

Sworn to and subscribed in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone this 4th day of May, 2026.

After reviewing this Complaint, I find there is probable cause to believe that defendant, Christian Page, committed the offense set forth above.

HONORABLE ANGEL D. MITCHELL
United States Magistrate Judge

11

## <u>PENALTIES</u>

**Count 1: Possession of or Access with Intent to View Child Pornography, 18 U.S.C. § 2252A(a)(5)(B) and (b)(2)**

- Punishable by a term of imprisonment of not more than twenty years. If such person has a prior conviction under section 1591, chapter 71, chapter 109A, chapter 110, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any state relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment or transportation of child pornography, or sex trafficking of children, the term of imprisonment shall be for not less than ten years and not more than twenty years. 18 U.S.C. § 2252A(b)(2).

- A term of supervised release of at least 5 years and no more than life. 18 U.S.C. § 3583(k).

- A fine not to exceed $250,000. 18 U.S.C. §3571(b)(3).

- A mandatory special assessment of $100. 18 U.S.C. § 3013(a)(2)(A).

- A $5,000 JVTA assessment. 18 U.S.C. § 3014.

- A child pornography assessment of $17,000. 18 U.S.C. § 2259A(a)(2).